**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DANIEL LUGO,<br><br>            *Plaintiff*,<br><br>      v.<br><br>U.S. DEPARTMENT OF JUSTICE, *et al.*<br><br>            *Defendants.* | Civil Action No. 15-879 (RDM) |

**MEMORANDUM OPINION**

Plaintiff Daniel Lugo, proceeding *pro se*, was serving a prison sentence in New York when he was convicted of the federal crime of conspiracy to commit murder in aid of racketeering. After his conviction, three Assistant U.S. Attorneys (AUSAs) sent a letter to the Chairman of the New York Board of Parole, stating their belief "beyond a reasonable doubt" that Lugo was guilty of murder. Lugo obtained an unsigned copy of the letter in the course of his habeas proceedings in New York, and he promptly filed this lawsuit against the Department of Justice. He alleges that the letter was inaccurate, insecurely safeguarded, and improperly disclosed, all in violation of his rights under the Privacy Act and the Fifth Amendment to the U.S. Constitution.

The Department of Justice has now filed a motion to dismiss, or, in the alternative, for summary judgment. Dkt. 9. Lugo, in turn, opposes the Department's motion and cross-moves for summary judgment. Dkt. 11. In addition, he seeks leave to file an amended complaint. Dkt. 22. For the reasons discussed below, the Department's motion will be granted, and Lugo's motions will be denied.

I.     **BACKGROUND**

For the following facts are taken from Lugo's complaint, the two declarations filed in this matter, and related court records of which the Court can take judicial notice. *See Veg-Mix, Inc. v. U.S. Dep't of Agric.*, 832 F.2d 601, 607 (D.C. Cir. 1987).

On March 8, 2000, Lugo entered custody of the New York State Department of Corrections and Community Supervision. Dkt. 1 at 17. He had been convicted of conspiracy in the second degree and criminal possession of a controlled substance in the third degree, both felonies. *Id.*; *see* N.Y. Penal Law §§ 105.15, 220.16. He was set to become eligible for parole on November 11, 2005. Dkt. 1 at 3, 17.

While in state custody, Lugo was indicted on federal charges. On August 12, 2002, a federal jury convicted Lugo of conspiracy to commit murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5). Dkt. 1 at 14; Calendar Entry No. 172, *United States v. Tyler*, No. 1-cr-922 (E.D.N.Y. Aug. 12, 2002). Judge Jack B. Weinstein later sentenced Lugo to ten years of imprisonment, which Lugo was to serve consecutively with his state court sentence. Dkt. 1 at 14; Calendar Entry No. 215, *United States v. Tyler*, No. 1-cr-922 (E.D.N.Y. Oct. 29, 2002).

On or about November 4, 2002, three AUSAs sent a letter to the Chairman of the New York Board of Parole regarding Lugo's federal conviction. Dkt. 1 at 2; *see* Dkt. 1 at 14–15 (draft of letter). The letter explained that, although Lugo had been convicted only of *conspiracy* to commit murder, the government had "compelling evidence that . . . Lugo was involved in the murder . . . itself." Dkt. 1 at 14. According to the letter, the government possessed "a recorded conversation" during which Lugo's coconspirator "identified . . . Lugo and his brother . . . as the hitmen who perpetrated the murder." *Id.* Judge Weinstein, however, had excluded that evidence from trial. *Id.* Nonetheless, the AUSAs offered the Parole Board a chance to review the

audiotape and transcript, and asserted that those items, "when viewed in conjunction with the evidence that was admitted to trial, establish[] beyond a reasonable doubt that . . . Lugo is guilty of murder[]." *Id.* at 15.

In September 2005, Lugo appeared for his first hearing before the New York Parole Board. Dkt. 1 at 3. The Parole Board asked about Lugo's federal conviction, but Lugo declined to answer on the grounds that "the case was still being litigated." *Id.* He was subsequently denied parole. *Id.* These events recurred in October 2007, when Lugo appeared before the Parole Board a second time and was again denied parole. *Id.* On October 31, 2008, Lugo reached his "conditional release date" under New York law, and was transferred to federal custody, *id.* at 3, 17, where he remains.

In the course of Lugo's October 2007 parole hearing, a parole officer first acknowledged to him the existence of the AUSA letter. *Id.* at 3. Lugo subsequently filed requests for the letter under the federal Freedom of Information Act and New York's Freedom of Information Law, but his requests were not acknowledged. *Id.* at 4.

On June 27, 2013, Lugo filed a petition for habeas corpus pursuant to 28 U.S.C. § 2241 in the U.S. District Court for the Northern District of New York. *See* Pet., *Lugo v. Hudson*, 13-cv-753 (N.D.N.Y. June 27, 2013), ECF No. 1. He alleged procedural flaws in the process by which New York had loaned him to federal authorities in 2001 for the purpose of Lugo's federal trial. *Id.* at 2–3. According to Lugo, the transfer was invalid, such that his federal sentence actually began when he was placed in temporary federal custody prior to his federal trial. *Id.* The petition was subsequently denied. *Lugo v. Hudson*, No. 13-cv-0753, 2014 WL 11350815 (N.D.N.Y. June 16, 2014), *aff'd*, 785 F.3d 852 (2d Cir. 2015).

On February 3, 2015, Lugo filed a "petition for a writ of *audita querela* and/or *writ of error com nobis*" in the U.S. District Court for the Eastern District of New York, the court which originally sentenced him to federal custody. *See* Pet., *United States v. Tyler*, No. 1-cr-922 (E.D.N.Y. Feb. 3, 2015), ECF No. 514. Lugo raised arguments related to the 2001 transfer of custody, *id.* at 5, and also argued that the November 2002 letter entitled him to a three-year reduction in his federal sentence on the grounds that it had "in effect designated the state penitentiary as the place of imprisonment," *id.* at 7–8. Judge Weinstein converted the petitions to petitions for habeas corpus under 28 U.S.C. § 2241 and denied them as abuses of the writ. Memorandum & Order, *United States v. Tyler*, No. 1-cr-922 (E.D.N.Y. Apr. 29, 2015), ECF No. 534. It was only during this proceeding that Lugo finally obtained an unsigned copy of the November 2002 letter. Dkt. 1 at 4. On April 7, 2015, he sent a letter to Judge Weinstein alleging that the November 2002 letter had violated his rights under the Privacy Act and the Fifth Amendment. Letter of April 7, 2015, *United States v. Tyler*, No. 1-cr-922 (E.D.N.Y. May 4, 2015), ECF No. 537. Judge Weinstein entered a one-line order stating that "[t]he letter does not support a grant of relief." Order, *United States v. Tyler*, No. 1-cr-922 (E.D.N.Y. May 4, 2015), ECF No. 538.

On April 30, 2015, Lugo filed the instant complaint. Dkt. 1 at 10. He brings substantially the same claims he outlined in his letter to Judge Weinstein, although neither Lugo nor the Department mentions either previous habeas proceeding. Specifically, Lugo alleges that the Department "unlawfully disclosed" the November 2002 letter; "misrepresented inaccurate [and irrelevant] information" in the letter "by conveying the presumption that [Lugo is] guilty of murder while the jury acquitted [him] of that charge"; and "failed to establish appropriate administrative and physical safeguards to insure the security and confidentiality" of the letter.

4

Dkt. 1 at 6.  He also claims that the Department disclosure placed him in "double jeopardy for the charge of murder" and deprived him of due process of law.  Dkt. 1 at 5–8.  According to Lugo, the letter caused him to be denied parole, thus prolonging his state incarceration by three years and postponing the start of his federal incarceration.  *Id.* at 7.  He seeks "to have those years attributed towards [his] federal sentence," resulting in his "immediate release."  *Id.* at 7–8.  He also seeks lost wages, compensatory damages, and punitive damages.  *Id.* at 8–9.

The Department filed a declaration averring that the November 2002 letter, like all Lugo's Justice Department records, were stored in the "Criminal Case File" database, designated "Justice/USA-007."  Dkt. 9-2 at 2 (Currie Decl. ¶ 4).

## II.     STANDARD OF REVIEW

A motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6) is designed to "test[] the legal sufficiency of a complaint."  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  In evaluating such a motion, the Court "must first 'tak[e] note of the elements a plaintiff must plead to state [the] claim' to relief, and then determine whether the plaintiff has pleaded those elements with adequate factual support to 'state a claim to relief that is plausible on its face.'"  *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675, 678 (2009)) (alterations in original) (internal citation omitted).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face,'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A plaintiff may survive a Rule 12(b)(6) motion even if "recovery is very remote and unlikely," but the facts alleged in the complaint

"must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56 (quotation marks omitted).

To establish entitlement to summary judgment, on the other hand, the moving party must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell*, 433 F.3d 889, 895–96 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the outcome of the litigation. *Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. A dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Liberty Lobby*, 477 U.S. at 248; *Holcomb*, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Fed. R. Civ. P. 56(c)(1)(A).

When a motion for summary judgment is under consideration, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Liberty Lobby*, 477 U.S. at 255; *see also Mastro v. Pepco*, 447 F.3d 843, 850 (D.C. Cir. 2006). The non-movant's opposition, however, must consist of more than allegations or denials and must be supported by affidavits, declarations, or other competent evidence, setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). The non-movant must provide evidence that would permit a reasonable jury to find in its favor. *See Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). If his evidence is "merely colorable" or "not significantly probative," summary judgment may be granted. *Liberty Lobby*, 477 U.S. at 249–50.

In this case, the facts alleged in Lugo's complaint and subject to the Court's judicial notice are sufficient to resolve each issue before the Court, with the exception of whether the Department can assert a Privacy Act exemption based on 5 U.S.C. § 552a(j)(2).  For that issue, the Court must rely on the Currie Declaration, Dkt. 9-2 at 2.  Therefore, the Court will apply the summary judgment standard to Lugo's Privacy Act claims, and the motion to dismiss standard to the constitutional claims.

### III.   ANALYSIS

A.   **The Department's Motion to Dismiss and for Summary Judgment**[1]

1.   *Privacy Act Claims*

The Privacy Act, 5 U.S.C. § 522a, "safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records." *Henke v. U.S. Dep't of Commerce*, 83 F.3d 1453, 1456 (D.C. Cir. 1996) (internal quotation mark omitted).  The Act authorizes four types of civil actions.  *See* 5 U.S.C. § 552a(g)(1).  *Doe v. Chao*, 540 U.S. 614, 618–19 (2004).  Lugo invokes two of them.  First, he invokes subsection (g)(1)(C), which creates a civil action against agencies who fail to keep records pertaining to the plaintiff in an accurate, relevant, timely, and complete condition, and the plaintiff suffers an "adverse determination" as a result.  Second, he invokes subsection (g)(1)(D), which creates a catch-all cause of action against an agency for *any* Privacy Act violation, provided the violation caused the plaintiff an "adverse effect."  As predicates to his (g)(1)(D) claim, Lugo says the Department violated three parts of the Act's substantive provisions:  subsection (b), which

---

[1] The Department does not argue that Lugo's action is barred by res judicata or the rule of *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).  Neither rule is jurisdictional.  *Omar v. McHugh*, 646 F.3d 13, 19 n.3 (D.C. Cir. 2011); *Skinner v. U.S. Dep't of Justice & Bureau of Prisons*, 584 F.3d 1093, 1100 (D.C. Cir. 2009).  The Court therefore does not consider them.

prohibits unauthorized disclosure of records; subsection (e)(5), which generally requires that records be accurate, relevant, timely, and complete; and subsection (e)(10), which requires agencies to "establish appropriate administrative, technical, and physical safeguards" to insure their records' security.[2] *See* Dkt. 1 at 1.  In a suit under (g)(1)(C) or (g)(1)(D), if the Court determines that the agency "acted in a manner which was intentional or willful," the plaintiff may be entitled to damages.  § 552a(g)(4); *see also Doe*, 540 U.S. at 627.

But the Act also "permits agencies to exempt certain systems of records from some of its requirements."  *Doe v. FBI*, 936 F.2d 1346, 1351 (D.C. Cir. 1991).  According to the Department, two such exemptions require dismissal of Lugo's claims.  *See* Dkt. 9 at 9–12.

    a.  Exemption (j)(2)

The Department first relies on the "general exemption" in subsection (j)(2).  That section permits an agency to "exempt any system of records" from any part of the Privacy Act, except for subsections (b), (e)(10), and additional subsections not relevant here.  § 552a(j).  But the agency may do so only if (1) the agency's principal function is criminal law enforcement, including "the activities of prosecutors . . . or parole authorities" and (2) the record system contains one of three types of information: (A) basic information about criminal offenders, "consisting only" of identifying data, criminal charges, parole status, and the like; (B) "information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual," and (C) "reports identifiable to an individual compiled at any stage of the process of enforcement of the criminal laws from arrest or indictment through release from supervision."  § 552a(j)(2).  Pursuant to this

---

[2] Specifically, Lugo states that his "action is brought pursuant to 5 U.S.C. § 552a(b), (e)(5) & (10), (g)(1)(C) & (D), (g)(4) & (g)(5)."  Dkt. 1 at 1.  Subsection (g)(5) provides the venue provision and statute of limitations for actions under subsection (g)(1).

authority, the Department has promulgated a regulation—28 C.F.R. § 16.81(a)(4)—which purports to exempt the database in which Lugo's files are kept from two of the Act's subsections at issue here: subsections (e)(5) and (g). *See* 28 C.F.R. § 16.81(a)(4).

In addition, the Department has qualified this exemption as applying "only to the extent that information in these systems is subject to exemption" under subdivisions (j)(2), (k)(1), or (k)(2) of the Act. 28 C.F.R. § 16.81(a). The D.C. Circuit has interpreted this language in the FBI's exemption regulation to mean that, in order to be exempted, a particular record must fulfill the statutory criteria in whichever subsection of the Act on which the agency relies. *See Vymetalik v. FBI*, 785 F.2d 1090, 1094–96 (D.C. Cir. 1986); *Doe v. FBI*, 936 F.2d 1346, 1353 & n.8 (D.C. Cir. 1991). Here, that is subsection (j)(2). *See* Dkt. 9 at 9.

As to the first (j)(2) criterion, it is undeniable that the letter "pertain[s] to . . . the activities of prosecutors . . . or parole authorities." The letter must also satisfy one of (j)(2)(A), (B), or (C). It cannot plausibly fall within subsection (j)(2)(A), as the letter contains far more information than the basic data that subsection allows. Subsection (j)(2)(B) arguably applies, given that the information *contained* in the letter (*i.e.*, the testimony of the informant) was "compiled for the purpose of a criminal investigation." But, as Lugo points out, the letter *itself* was not created for the purpose of investigation; it was created to inform and possibly influence the New York Division of Parole. Dkt. 11 at 9. In any event, the letter fits comfortably into (j)(2)(C), which broadly extends to "reports identifiable to an individual" which were compiled "at any stage" of the criminal process through "release from supervision." *See, e.g.*, *Jordan v. U.S. Dep't of Justice*, 668 F.3d 1188, 1201–02 (10th Cir. 2011) (finding that psychological reports fell within (j)(2)(C) because they were 'identifiable' to the prisoner and were compiled during his incarceration). As a result, the Department's (j)(2) exemption applies to the letter.

9

With respect subsection (g), however, the regulation is unenforceable. *See Tijerina v. Walters*, 821 F.2d 789, 795–96 (D.C. Cir. 1987). Subsection (g) is not a substantive provision; it is a grant of jurisdiction and waiver of sovereign immunity "directed not toward agencies but toward courts and aggrieved individuals." *Id.* As the D.C. Circuit has explained, although agencies may exempt *systems of records* from the Act, they may not exempt *themselves*. *Id.* at 795. Thus, "an agency has no power under the Act to exempt itself from the civil liability provisions of subsection (g)." *Id.*; *Hurt v. Cromer*, No. 09-5224, 2010 WL 8753255 (D.C. Cir. June 11, 2010) (per curiam). The Department's claim that the exemption for subsection (g) deprives Lugo of any "remedy at law," Dkt. 9 at 10, is therefore incorrect.

The Court, accordingly, concludes that the November 2002 letter is exempt from the substantive requirements of subsection (e)(5). And, because the slight variation in wording between (e)(5) and (g)(1)(C) is "of no substantive significance," *Doe v. United States*, 821 F.2d 694, 699 (D.C. Cir. 1987), Lugo has no cause of action under subsection (g)(1)(C), *see Ramirez v. Dep't of Justice*, 594 F. Supp. 2d 58, 65 (D.D.C. 2009) (finding exemption from (e)(5) defeated suit brought under (g)(1)(C)).

      b.  Routine Use

The DOJ also relies on the "routine use" exception, which allows agencies to bypass the requirements of subsection (b) and disclose records without consent. *See* 5 U.S.C. § 552a(b)(3). To invoke this exception, an agency must show (1) that notice of the asserted "routine use" has been published in the Federal Register, along with the categories of users and the purpose of the use, *id.* § 552a(e)(4)(D); and (2) that the agency disclosed the record "for a purpose which is compatible with the purpose for which [that record] was collected," *id.* § 552a(a)(7). *See Radack v. U.S. Dep't of Justice*, 402 F. Supp. 2d 99, 105–06 (D.D.C. 2005). The compatibility

requirement is satisfied if a "concrete relationship or similarity, [or] some meaningful degree of convergence" exists "between the disclosing agency's purpose in gathering the information and in its disclosure." *U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers*, AFL-CIO, 9 F.3d 138, 144 (D.C. Cir. 1993) (opinion of Silberman, J.) (quoting *Britt v. Naval Investigative Serv.*, 886 F.2d 544, 549–50 (3d Cir. 1989)); *accord Ames v. U.S. Dep't of Homeland Sec.*, 153 F. Supp. 3d 342, 347 & n.7 (D.D.C. 2016).[3]

Here, a notice of the "routine uses" for the relevant database, JUSTICE/USA-007, has been published in the Federal Register. *See* 63 Fed. Reg. 8659-02, 8669 (Feb. 20, 1998). The notice states that the records in the database "are maintained for the purpose of prosecuting or otherwise resolving criminal cases or matters handled by the United States Attorneys." *Id.* It then lists a number of "routine uses"—one of which is directly on point. Routine use (g) provides: "A record relating to a person held in custody . . . after conviction . . . may be disseminated to a . . . state . . . parole . . . authority . . . ." 63 Fed. Reg. at 8669.

Neither party disputes that the notice satisfies the exception's publication requirement. Lugo, however, disputes compatibility. He argues that that the Department's purpose in disclosing the November 2002 was letter was "to influence the [P]arole [B]oard's decision," which he says differs from both the stated purpose of the use and the purpose for which the letter was collected. Dkt. 11 at 12. The Court disagrees. The Department collected the information in the letter (*i.e.*, the informant confession) for the purpose of enforcing federal criminal laws. Then, as Lugo says, the Department created and disclosed the letter for the purpose of

---

[3] In *U.S. Postal Service*, Judge Silberman declined to "decide the precise limitations created by section 552a(a)(7)'s compatibility requirement" outside the context of labor law. 9 F.3d at 146. But he described the Third Circuit's "concrete relationship" test as perhaps too *high* of a bar. *Id.* at 145. Satisfying that test is thus likely sufficient, even if not necessary, to establish "compatibility" in this Circuit.

11

influencing the Parole Board's determination—or, put differently, to inform the parole officers that the Department considered Lugo a dangerous individual who posed a risk to others. The fact that the Department sought to achieve its enforcement goal by communicating with state authorities is not unusual, and indeed, has a "concrete relationship" to the Department's law enforcement mission.

The Court, accordingly, concludes that the November 2002 is properly excepted from the informed disclosure requirements of subsection (b).

      c.  <u>Adverse Effect</u>

Finally, the Department argues that Lugo has failed to allege that he suffered an "adverse determination," "adverse effect," or "actual damages" caused by the alleged Privacy Act violations. *See* Dkt. 9 at 12–13; *see also* 5 U.S.C. § 552a(g)(1)(C), (g)(1)(D) & (5). Because the Court has concluded that the November 2002 letter is exempt from subsections (b) and (e)(5), the Court will consider only the "adverse effect" of the alleged violation of (e)(10)—the only subsection Lugo identifies from which the letter has not been shown to be exempt.

Subsection (e)(10) requires agencies to "establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records," and to "protect against any anticipated threats or hazards to their security which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained." 5 U.S.C. § 552a(e)(10). In order to state a claim under the Privacy Act for a violation of this subsection, Lugo must allege that the Department's failure to comply "ha[d] an adverse effect" on him. *Id.* § 552a(g)(1)(D). This requires a "causal connection" between the agency violation and the adverse effect. *Doe v. U.S. Dep't of Justice*, 660 F. Supp. 2d 31, 49 (D.D.C. 2009) (quoting *Mandel v. U.S. Office of Pers. Mgmt.*, 244 F. Supp. 2d 146, 153

(E.D.N.Y. 2003)); *accord Albright v. United States*, 732 F.2d 181, 186 (D.C. Cir. 1984). Moreover, because Article III standing requires "a causal connection between the injury and the conduct complained of," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992), the Court has an independent duty to examine it.

Lugo, however, has not alleged any causal connection between the Department's security practices with respect to its Criminal Record Files and any "adverse effect" on him. His complaint sets forth essentially three theories of injury: (1) that the November 2002 letter caused the Parole Board to deny Lugo parole, delaying the start of his federal sentence by three years; (2) that the extra three years of incarceration deprived him of the opportunity to earn wages; and (3) that the extra three years of incarceration caused him pain and suffering. *See* Dkt. 1 at 8–9. These theories of injury have nothing to do with the DOJ's security practices. Indeed, Lugo has not alleged any facts pertaining to those security practices at all—and it is difficult to imagine how he might.[4] Without such an adverse effect, subsection (c)(1)(D) is unavailable to Lugo to enforce his subsection (e)(10) rights.

\*    \*    \*

In sum, the Court concludes that the November 2002 letter is exempt from the requirements of subsections (b) and (e)(5). In addition, Lugo cannot plausibly allege injury as a result of any alleged violation of subsection (e)(10). His claims under the Privacy Act, accordingly, will be denied.

---

[4] To the extent that Lugo means to argue that the Department's *intentional* disclosure of the November 2002 letter constituted a "security breach," that claim must be brought under subsection (b), which governs intentional agency disclosures.

13

2.     *Constitutional Claims*

Lugo also alleges that, by falsely accusing him of murder in a letter to the Parole Board, the Department violated his constitutional rights—specifically, his right to be free from double jeopardy and his due process right to a fair parole hearing. *See* Dkt. 1 at 2, 9; U.S. Const. amend. V. The Government uncharitably reads Lugo's complaint as asserting a due process "property interest" in the November 2002 letter—as one would have in, say, a government benefit—and argues that Lugo has "no legitimate claim of entitlement" to the letter. *See* Dkt. 9 at 13–14 (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 576 (1972)). The Court is unpersuaded by the Government's reading of Lugo's complaint. Nonetheless, the Court has "an independent obligation" to examine its own subject-matter jurisdiction, *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006), and it concludes that it lacks jurisdiction over Lugo's constitutional claims.

a.     <u>Constitutional Claims for Damages</u>

Neither this Court nor any other has jurisdiction to hear constitutional claims for damages against the federal government itself or departments thereof. Sovereign immunity poses a jurisdictional bar to such claims. *Benoit v. U.S. Dep't of Agric.*, 608 F.3d 17, 20 (D.C. Cir. 2010); *see also FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Lugo's constitutional claims for damages against the Department of Justice must, accordingly, be dismissed.

b.     <u>Constitutional Claims for Release</u>

Nor can the Court order Lugo's release from prison. "Habeas is the exclusive remedy . . . for the prisoner who seeks 'immediate or speedier release' from confinement." *Skinner v. Switzer*, 562 U.S. 521, 525 (2011) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)); *accord Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660, 666 (D.C. Cir. 2013). And, although courts often construe *pro se* complaints as habeas petitions and transfer them to the proper venue, doing

so here would serve no purpose. Two of Lugo's habeas petitions have already been denied. He cannot file another without appellate court authorization. *See* 28 U.S.C. §§ 2244(b)(3), 2255(h). Unless Lugo secures that authorization, the district courts are without jurisdiction to entertain his habeas claims. *Burton v. Stewart*, 549 U.S. 147, 157 (2007).

**B.      Lugo's Motion for Leave to File an Amended Complaint**

Lugo has also moved to amend his complaint. Dkt. 22. He seeks to add as defendants the three AUSAs who sent the letter, both in their official and individual capacities. Dkt. 22-1 at 1. Lugo would broaden his Privacy Act claims to include these attorneys as defendants, *id.* at 9, and would allege new claims against them under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), *id.* at 1. The Department argues that leave should be denied because Lugo's proposed new claims would be futile. Dkt. 24 at 3–10. "Courts may deny a motion to amend a complaint as futile" if "the proposed claim would not survive a motion to dismiss." *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996)

1.      *Proposed Bivens Claims*

The Department is correct that Lugo's proposed *Bivens* claims against the AUSAs in their official capacities would be futile. "It is well established that *Bivens* remedies do not exist against officials sued in their official capacities." *Kim v. United States*, 632 F.3d 713, 715 (D.C. Cir. 2011).

Lugo's individual-capacity *Bivens* claims fare no better. For one, the D.C. Circuit has declined to create a *Bivens* remedy for the improper disclosure of information subject to the Privacy Act's protections. *See Wilson v. Libby*, 535 F.3d 697, 707 (D.C. Cir. 2008); *Jimenez v. Exec. Office for U.S. Attorneys*, 764 F. Supp. 2d 174, 183 (D.D.C. 2011). And, to the extent that

15

Lugo's allegations exceed the scope of the Privacy Act, the AUSAs would still enjoy qualified—if not absolute—immunity.

The Department argues for absolute immunity, which shields prosecutors from liability for conduct "intimately associated with the judicial phase of the criminal process." *Van De Kamp v. Goldstein*, 555 U.S. 335, 343 (2009). The Department also notes that a prosecutor's formal recommendations regarding parole—which is an extension of the sentencing court's criminal process—generally satisfy this test. *See Allen v. Thompson*, 815 F.2d 1433, 1434 (11th Cir. 1987); *see also Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 750 (9th Cir. 2009); *Pinaud v. Cty. of Suffolk*, 52 F.3d 1139, 1149-50 (2d Cir. 1995); *Johnson v. Kegans*, 870 F.2d 992, 994, 997 (5th Cir. 1989); *Daloia v. Rose*, 849 F.2d 74, 75 (2d Cir. 1988). Yet none of these cases addresses a circumstance like this one, in which a *federal* prosecutor seeks to influence a *state* parole decision. It is not clear to the Court whether a prosecutor's representations to a separate sovereign are entitled to absolute immunity, as well.

The Court need not decide whether such an extension is warranted, however, because qualified immunity is clearly available. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As far as the Court can discern, Lugo does not contend that the AUSAs misrepresented the content of the suppressed tapes. Rather, he seems to contend that his federal acquittal of the murder charge established his innocence of that charge as a matter of law, and that the AUSA's representation that they believed he in fact had committed murder was therefore "inaccurate." Dkt. 22-1 at 3. But there is no law—much less clearly established law—to support

16

the notion that the AUSAs' representation to the parole commission that Lugo was, in fact, guilty of murder violated his constitutional rights.  The proposed *Bivens* claims are therefore futile.

    2.    *Proposed Privacy Act Claims*

To the extent Lugo means to add the individual AUSAs to his Privacy Act claims, those claims are futile, as well.  "[N]o cause of action exists" against individual defendants "under the Privacy Act," because the statute "concern[s] the obligations of agencies as distinct from individual employees in those agencies."  *Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006).  And even if a cause of action existed, the Privacy Act claims against the AUSAs would fail for the same reasons as Lugo's Privacy Act claims against the Department. *See supra* pp. 7–13.

The Court, accordingly, concludes that Lugo's proposed amendments would not survive a motion to dismiss.  The Court will deny leave to amend.

## CONCLUSION

The Department's motion to dismiss and for summary judgment, Dkt. 9, will be granted. Lugo's cross-motion for summary judgment, Dkt. 11, and motion for leave to file an amended complaint, Dkt. 22, will be denied.  A separate order will issue.

    /s/ Randolph D. Moss
    RANDOLPH D. MOSS
    United States District Judge

Date:  September 30, 2016.